OPINION OF THE COURT
Herbert Kramer, J.
The instant application is for a court order fixing a referee’s fee in a foreclosure action. After the referee determined the amount due on a mortgage, a final judgment was entered *328 together with an order directing that the property be sold at auction. The sale was scheduled for May 5, 2005. The referee left his office at 1:45 p.m. to be at the sale by 3:00 p.m. When he arrived, he saw that the sale had been cancelled. It was only after he returned to his office that he found a fax indicating that the sale was cancelled because a bankruptcy petition had been filed. He now moves for a fee for his additional time and travel to the sale.
The opposition relies on CPLR 8003 (b) and certain cases decided thereunder which hold that until the sale is completed, a referee is not entitled to funds under that section. In this court’s view, this is a misreading of CPLR 8003.[1] This provision is composed of two subdivisions. CPLR 8003 (a) provides for a basic $50 per diem fee to be paid to a referee, but allows a court, in its discretion, to fix a different, larger per diem fee where “there is [a] stipulation by the parties, [or] a specific rate set forth by the court in the order of reference.” (Pittoni v Boland, 278 AD2d 396, 397 [2d Dept 2000]; see also Matter of Charles F., 242 AD2d 297 [2d Dept 1997]; but see Albano v Albano, 2003 NY Slip Op 51158[U] [Sup Ct, NY County 2003] [relying upon decisions in the Third and Fourth Departments and awarding a fee of $6,826.50 even absent such prior agreement or court order to a referee dealing with a complex matter who submitted a detailed affidavit].)
*329 In recognition of these requirements and in recognition of the realities of legal practice in the year 2005 which render the $50 per diem statutory fee entirely unrealistic, if not insulting to practicing attorneys whose ordinary hourly rates, not daily rates, often exceed this figure by more than twice that amount, this court has prepared and promulgated a supplemental order of sale which provides, inter alla, that the referee is entitled to a fee of $250 for each adjournment and cancellation of the sale.[2] *330 Such order of sale was included in the orders that were promulgated in this case. The award of this fee is based upon the per diem fee set forth in CPLR 8003 (a) rather than fees that are provided for in CPLR 8003 (b). Such being the case, the request for this fee in the instant matter is not, as respondent would characterize it, “premature” since CPLR 8003 (a) does not trigger an application for a per diem fee to the occurrence of a specific event. Indeed, even assuming arguendo that CPLR 8003 (b) requires that a sale have taken place before a referee’s compensation can be set under its provisions, CPLR 8003 (a) has no such requirement.
Moreover, this court holds that the language of CPLR 8003 (b) cannot be read to prevent payments in excess of $500 made to referees as part of their per diem work prior to the sale because such reading would lead to a highly illogical and inequitable result. If any and all payments to referees are conditioned upon the sale of the property and cannot exceed $500 unless the property sells for more than $50,000, then there are many occasions where a referee would be working for hours or even days without compensation. This would certainly happen where, for *331 example, the sale has been rescheduled several times and then never actually takes place because a forbearance agreement had been reached or the property refinanced or sold.
The referee’s dilemma in this action is very commonplace and deserves attention and careful consideration by our judges. According to our information, some 75% of the cases that appear in the auction sale calendar are not actually sold on the date of the scheduled sale. There are a number of reasons for this: a forbearance agreement may have been reached with the debtor; there may have been a bankruptcy filing; or other matters may have interfered with the successful completion of the bidding and sale process. Under all of these circumstances, a referee’s time has been utilized in preparation and in travel time, for which the referee must be compensated. This court hereby directs that the referee in this matter be paid $250 for the time expended in the matter of the reference in accordance with the prior order of this court.[3]

. CPLR 8003:
“(a) Generally. A referee is entitled, for each day spent in the business of the reference, to fifty dollars unless a different compensation is fixed by the court or by the consent in writing of all parties not in default for failure to appear or plead.
“(b) Upon sale of real property. A referee appointed to sell real property pursuant to a judgment is entitled to the same fees and disbursements as those allowed to a sheriff. Where a referee is required to take security upon a sale, or to distribute, apply, or ascertain and report upon the distribution or application of any of the proceeds of the sale, he or she is also entitled to one-half of the commissions upon the amount secured, distributed or applied as are allowed by law to an executor or administrator for receiving and paying out money. Commissions in excess of fifty dollars shall not be allowed upon a sum bid by a party, and applied upon that party’s judgment, without being paid to the referee. A referee’s compensation, including commissions, upon a sale pursuant to a judgment in any action cannot exceed five hundred dollars, unless the property sold for fifty thousand dollars or more, in which event the referee may receive such additional compensation as to the court may seem proper.” (See also U.S. Mtge. v Almeida, 8 Misc 3d 694 [Sup Ct, Bronx County 2005]; NYCTL 1998-2 Trust v Kahan, Sup Ct, Kings County, Index No. 36815/01, Demarest, J.)

. The supplemental notice of sale order recites:
“NOW, upon all of the pleadings and submissions filed in this matter and upon all the proceedings; it is hereby
“ORDERED that the referee will give ten (10) days notice to the Clerk of this Court to schedule a sale pursuant to this order; and it is further
“ORDERED, that the referee shall send a copy of such notice which will include the commonly known residence address of the premises to at least three papers of general circulation within the City of New York whose circulation exceeds 250,000 copies per day, to the attention of the Real Estate Department; and it is further
“ORDERED, that the Clerk of this Court is directed to post such notice of sale together with a commonly known street address on the New York State Court’s official website; and it is further
“ORDERED, that this case shall not be added to the Court’s Auction Calendar of Sales on the date of the sale; and it is further
“ORDERED, that the referee is to send a copy of the final report of sale directly to chambers within thirty (30) days of the date of sale. It must include the original price bid at auction; and it is further
“ORDERED, that the referee will be entitled to a fee of $250.00 for each adjournment and cancellation of the sale; and it is further
“ORDERED, that the appointed referee is required to comply with Rule 36 in the event that the total payment to the referee exceeds $550.00; and it is further
“ORDERED, that this motion be and the same is hereby granted to the extent herein provided; and it is further,
“ORDERED, that in the event that the sale of this property which shall be absolute and binding forever and stand as in all things ratified and confirmed, produces a surplus, such surplus money proceeding shall be referred to _as Referee to Compute who is to notify in writing all claimants, all appearing parties and any other person who has a lien on the surplus monies to appear and attend a hearing on the distribution of said surplus money and to conduct said hearing and to then ascertain and report the amount due to said petitioner or TO ANY OTHER PERSON OR ENTITY who has a lien on such surplus monies and to ascertain the priorities of the several liens, if any, and to report with all convenient speed; and it is further
*330 “ORDERED, that the time from bid to closing is limited to a period of 90 days, which period shall only be extended by order of this Court. If an extension has not been granted, and more than 90 days have elapsed, the referee is directed to deposit the down payment into the Client Benefit Fund whereupon the referee’s appointment will then terminate; and it is further
“ORDERED, that upon the deposit of the down payments to the Client Benefit Fund, plaintiff will make a further order for the re-bidding of the property; and it is further
“ORDERED, that no payment is to be made to the referee from the surplus monies pursuant to the consent of the parties, but rather it is hereby
“ORDERED, that all fees charges and assessments against surplus monies be made in compliance with statutory requisites to be confirmed by order of this Court; and it is further
“ORDERED, that the referee is prohibited from retaining funds for him/herself or paying funds to him/herself without compliance with Rule 36 and without prior order of the Court; and it is further
“ORDERED, that the referee is prohibited from transferring the deed to any entity other than the bidder or the bidder’s wholly owned, closely held corporation; and it is further
“ORDERED, that the Referee appointed herein is subject to the requirements of Rule 36.2 (c) of the Rules of the Chief Judge and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the appointing judge forthwith.”

. In the interests of expediency and because this court was aware that it had begun promulgating its supplemental notice of sale orders before the date of this reference, this court ordered the file and retrieved it. However, the bar is hereby notified that any further such applications must include a copy of this supplemental notice, if indeed one exists.