OPINION OF THE COURT
Paul A. Victor, J.
Issue Presented
This proceeding raises a recurring issue concerning the payment of referee’s fees arising out of mortgage foreclosure proceedings. The issue has evoked conflicting approaches by the trial courts, and judicial responses which are still developing. Although it has become almost commonplace for referees to seek and obtain payment in excess of the $500 fee which is set forth in CPLR 8003 (b), the issue as to the appropriate methodology to compensate referees has only recently begun to receive the attention of the courts. (See Bergman, Real Estate Update, Referee Fees: Courts Clarify Issue of Extra Payment, NYLJ, Mar. 29, 2006, at 5, col 2.)
Related issues were previously considered by this court in U.S. Mtge. v Almeida (8 Misc 3d 694 [Sup Ct, Bronx County 2005]). The issue then presented concerned the court’s power and authority in a mortgage foreclosure proceeding to approve payment in excess of $500 to a referee appointed to sell property. The payment sought in this case (as distinguished from the payment in U.S. Mtge. v Almeida, supra) is an additional $500 sought to compensate the referee as a result of, among other things, the need to conduct a separate “sit down” closing of title in the office of the referee.
The court is, as it was in U.S. Mtge. v Almeida (supra), hopeful of providing some guidance to the bench and bar in a legal arena in which the decisional law is still in a state of flux and conflict.[1]
The Parties
This mortgage foreclosure action was brought by plaintiff JP Morgan Chase Bank to foreclose a mortgage secured by a lien *522 on a condominium. The mortgagor, Frank Pizzini, was named as a defendant, as was the condominium board of managers, i.e., the Board of Managers of Parkchester South Condominium, Inc. Defendant Parkchester has filed a lien for unpaid common charges. The remaining defendants are judgment debtors with filed judgments.
Background and Procedural History
In due course the condominium unit was sold at a public auction by the court appointed referee, for a total amount of $63,500, resulting in a surplus reported to be $6,110.15. The report of sale was filed with the County Clerk on April 22, 2005. Parkchester, which filed a claim against the surplus for common charges,[2] then brought the instant motion for an order confirming the referee’s report of sale, and for an order appointing a referee to ascertain and compute the claims against the surplus funds. The motion, which was served on plaintiff and the mortgagor’s attorney, was submitted without any opposition.
Upon reviewing the unopposed motion papers and the attached report of sale, the court noted that the referee had in fact paid himself $1,000. The report indicated that the referee included a charge in the amount of $500 for “Referee’s Fee.” The report shows that the referee calculated the amount due to the plaintiff by subtracting the amounts due for disbursements from the proceeds of the sale, arriving at a total amount due to the plaintiff. After calculating the amount due to the plaintiff, the referee then, without any explanation in the report, paid himself an additional $500, reflected in the report as “Referee’s Closing Fee.”
This court, upon discovering that the referee had in fact received $1,000 for his services in connection with the sale, set the matter down for a hearing and a full explication of the propriety of the payment of the additional fees.
The Hearing Testimony
The hearing testimony indicated that in fact the payment of the additional $500 to the referee was a point of contention between plaintiffs attorney and the referee to sell, and that due to the plaintiffs attorney’s refusal to consent to the payment, it was finally “determined” that the referee would take the extra *523 payment from the surplus after calculating the total amount due to the plaintiff.
As explained at the hearing, if the property is sold to the mortgagee, the transfer of title is usually accomplished by mailing the appropriate documents, which are prepared and forwarded by the seller’s attorney, to the referee. After the documents are signed by the referee, the documents are returned by mail. The referee stated that these services are considered to be part of the sale, and no extra payment is sought. However, as explained by the referee, when property is purchased by a third party, it is necessary to hold a closing approximately one month after the sale. The closing may take place at the referee’s office, in which event use will be made of the referee’s copy machine, fax, telephones, and other office equipment. In the alternative, the closing may take place at the office of plaintiffs attorney, or another location, in which event the referee will be required to travel to and from his or her office to the place of closing. According to the referee, in the present case the additional payment of $500 was sought because the property was purchased by a third party, and consequently it was necessary, in order to transfer title, to conduct a closing at the referee’s office. The closing took approximately two hours to complete.
The referee stated that the custom of charging an additional fee for the closing was commonplace, whereas, according to the plaintiffs attorney, while the practice was not unheard of, the vast majority of referees did not impose any additional charge for conducting the closing. In addition, the plaintiffs attorney stated that he refused to consent to the extra payment, as he had no authority to do so, and no extra payment had been authorized by the court.
At the hearing, it was agreed, however, by the plaintiffs counsel and the referee, as well as by counsel for the defendant Parkchester, that the additional amount of $500 for the sit-down closing was a fair and reasonable fee for the time expended by the referee, and for the services rendered. Plaintiffs only objection to payment at the time of the closing was that there was no prior guidance from the court that the fee was reasonable or authorized.
The court was hopeful that some methodology could be adopted to avoid similar disagreements in the future, and to provide guidance to the bar as to the quantum of referee’s fees, as well as practices and procedures which the court would approve. The court accordingly sought input as to the practice of *524 charging an additional fee for canceled sales, although that issue was not directly presented on the instant motion. All counsel and the referee agreed that if the referee was not given prior notice and appeared on the scheduled date and the sale is canceled, a fee of $500 would be appropriate. They also agreed that in the event a scheduled sale was canceled with less than 48 hours’ notice to the referee, it would be fair and reasonable for the referee to seek an additional fee, albeit less than $500. There was a general consensus that a $250 fee would be fair and reasonable for a canceled sale if notice of cancellation was given without at least 48 hours’ advance notice. However, counsel for the plaintiff again emphasized that the problem with charging such additional fees (apart from the amounts requested) is the absence of prior guidance from the court which would indicate that any such payment would be considered appropriate or reasonable.
Law Regarding Compensation of Referees to Sell
CPLR 8003 provides the mechanism for payment of the fees of a referee appointed to compute (CPLR 8003 [a]) or to sell (CPLR 8003 [b]) real property pursuant to a judgment of foreclosure. That section states:
“(a) Generally. A referee is entitled, for each day spent in the business of the reference, to fifty dollars unless a different compensation is fixed by the court or by the consent in writing of all parties not in default for failure to appear or plead.
“(b) Upon sale of real property. A referee appointed to sell real property pursuant to a judgment is entitled to the same fees and disbursements as those allowed to a sheriff. Where a referee is required to take security upon a sale, or to distribute, apply, or ascertain and report upon the distribution or application of any of the proceeds of the sale, he or she is also entitled to one-half of the commissions upon the amount secured, distributed or applied as are allowed by law to an executor or administrator for receiving and paying out money. Commissions in excess of fifty dollars shall not be allowed upon a sum bid by a party, and applied upon that party’s judgment, without being paid to the referee. A referee’s compensation, including commissions, upon a sale pursuant to a judgment in any action cannot exceed five hundred dollars, unless the property sold *525 for fifty thousand dollars or more, in which event the referee may receive such additional compensation as to the court may seem proper.” (CPLR 8003 [emphasis added].)
In U.S. Mtge. v Almeida (supra), this court was primarily concerned with a situation in which additional fees were being sought for adjourned or canceled sales. The court reached a number of conclusions, including: (1) that CPLR 8003 (b) limits the compensation of the referee to sell at $500, unless the court finds that additional compensation is proper; (2) that the plaintiff and the referee may agree to additional compensation for a referee in a foreclosure action, but such compensation must be both reasonable and voluntarily paid;[3] (3) that in the event there is no prior court approval and there is no voluntary agreement to pay additional compensation, the referee must go forward with the sale and then seek additional compensation by way of an application to the court; (4) that the application for and the awarding of additional compensation must await the conclusion of the sale, as the power of the court to award additional compensation is, as stated in CPLR 8003 (b), dependent on the sale of the property in an amount of $50,000 or more;[4] and (5) that in view of the mandate of section 36.4 (b) (2) of the Rules of the Chief Judge (22 NYCRR), referees who receive *526 compensation in excess of $500 for . a sale (whether pursuant to court order or by stipulation) must comply with section 36.4 and file the appropriate forms.
Subsequent to this court’s decision in US. Mtge., other courts have reached various conclusions as to the proper methodology to be applied when determining the compensation to be paid to referees pursuant to CPLR 8003. In a case with facts similar to those presented here, Wells Fargo Bank Minn. N.A. v Davis (8 Misc 3d 561 [Sup Ct, Kings County 2005, Kramer, J.]), the court held that a referee appointed to sell property in a foreclosure proceeding is entitled to no more than $500 unless the court gives prior approval to the additional compensation. In that case, Justice Kramer, on a motion to confirm the report of sale and to appoint a referee in the surplus proceeding, discovered that the referee retained or received the sum of $1,250. The court ordered the return of all funds in excess of $500. The court held that since the retention of any amount above $500 would affect the amount of the surplus, no additional fee could be paid unless a motion for additional fees was brought on notice to all persons entitled to notice of the surplus proceeding pursuant to RPAPL 1361.
Despite the foregoing, the same justice, in Mortgage Elec. Registration Sys., Inc. v Victor (9 Misc 3d 327 [Sup Ct, Kings County 2005]), specifically addressed the issue of adjourned and canceled sales which had been raised in U.S. Mtge. v Almeida {supra). Justice Kramer held that a referee to sell is entitled to the authorized fee of $500 plus $250 for each adjournment and cancellation of a sale. However, Justice Kramer concluded that the payments for canceled sales were not made pursuant to CPLR 8003 (b), which appears to limit the referee’s compensation to $500. Justice Kramer reasoned that presale compensation should and could be paid to the referee under CPLR 8003 (a). He stated that,
“[mjoreover, this court holds that the language of 8003 (b) cannot be read to prevent payments in excess of $500 made to referees as part of their per diem work prior to the sale because such reading would lead to a highly illogical and inequitable result. If any and all payments to referees are conditioned upon the sale of the property and cannot exceed $500 unless the property sells for more than $50,000, then there are many occasions where a referee would be working for hours or even days *527 without compensation. This would certainly happen where, for example, the sale has been rescheduled several times and then never actually takes place because a forbearance agreement had been reached or the property refinanced or sold.” (Mortgage Elec. Registration Sys., Inc. v Victor, 9 Misc 3d 327, 330-331 [Sup Ct, Kings County 2005]; but see NYCTL 1998-2 Trust v Kahan, 9 Misc 3d 1119[A], 2005 NY Slip Op 51677[U] [Sup Ct, Kings County, 2005, Demurest, J.] [declining to follow the holding in Mortgage Elec. Registration Sys., Inc. v Victor, and holding that CPLR 8003 (b) imposes a $500 limit on the compensation to a referee to sell, which may not be exceeded unless the property is sold for $50,000 or more; and holding that where no sale occurred due to a settlement, the provisions of CPLR 8003 (a) may be applied in tandem together with the more explicit fee provisions of CPLR 8003 (b) for actual specific services rendered, but the whole amount being subject to the $500 limit].)
Discussion
As noted above, Justice Kramer has held that CPLR 8003 (a) may be construed to govern the compensation for a referee with respect to canceled sales. Certainly, the “sale” may be parsed into its component parts, and thus it may be tempting to consider that CPLR 8003 (a) might apply to the “presale” cancellations or postsale closings. This court notes, however, that the duties of a referee appointed to sell (as opposed to a referee to compute) encompass all of the preauction and post-auction activities required to transfer title, and thus all of those activities are part and parcel of the compensation for the sale. While the court certainly sympathizes with its colleagues and calls for legislative action or the adoption of a suitable court rule to clarify the issue, it must adhere to the legal maxim that the more specific language (of CPLR 8003 [b]) controls over the more general language (of CPLR 8003 [a]). The statute explicitly states that the fee of a referee appointed to sell “cannot exceed five hundred dollars, unless the property sold for fifty thousand dollars or more, in which event the referee may receive such additional compensation as to the court may seem proper” (CPLR 8003 [b]); and this specific direction must be taken as controlling with respect to all of the activities encompassed by the appointment to sell real property.
*528 In the present case, the property in fact sold for in excess of $50,000, i.e., $63,500. There is, therefore, no impediment to this court’s awarding of an additional fee. The court also notes that the only party with a filed claim to the surplus fund (Parkchester) has brought the present application and voiced no objection to the additional fee. Moreover, the surplus is sufficient to pay the lien of the condominium for common charges as well as the filed judgments. In view of the agreement of the parties that $500 is a proper fee for a third-party closing, the court approves of the fee, subject to compliance with the aforesaid section 36.4.
This court notes that it has heard no countervailing authority questioning the propriety of additional fees in routine cases for canceled sales, or for third-party closings — save that there is considerable confusion when such fees are demanded, either because the amounts are excessive, or because those requests were not approved by the court. The court will therefore set forth the guidelines it will apply on future applications.
With respect to sales, the court will approve a fee of $250 for each sale which is scheduled and canceled with less than 48 hours’ notice to the referee (so long as the property is sold for an amount in excess of $50,000). If the referee appears for a sale without prior notice that it has been canceled, an additional fee of $500 for the new scheduled sale date will be approved (so long as the property is sold for an amount in excess of $50,000). Payment may be accepted by the referee subject to such future order which the court may make in approving the fee at the time at which the referee’s report is submitted for confirmation. However, attendance at the new scheduled sale may not be made contingent upon prepayment of the referee’s fee. In the event the property is bid on by the mortgagee, the court will consider the property to have been sold in an amount equal to the amount of the outstanding mortgage (not just the amount bid by said mortgagee) such that the referee’s acceptance of a fee in excess of $500 will not violate CPLR 8003 (b) so long as the indebtedness exceeds $50,000. In cases in which the property is purchased by a third party and the referee is required to attend a closing subsequent to the auction of the property, the court will approve an additional fee of $500 for the closing of title, so long as the property is sold for an amount in excess of $50,000. The referee must comply with part 36 of the Rules of the Chief Judge (22 NYCRR) in the event the total compensation for all of the above services exceeds $500 for the sale. As noted above, the referee’s acceptance of these additional amounts is subject to *529 the approval of the court upon the confirmation of the sale. At that time the court will consider any objections to an enhanced fee as well as any request by the referee for further fees which the referee claims to be fair and proper.
At the hearing it was called to the court’s attention by the referee that the need of the referee to make a separate motion would involve additional time, effort and resources. Therefore, in order to avoid the need for a separate motion, this court will accept an affidavit submitted by the referee in support of, or in opposition to, the motion, which said affidavit may be delivered to the court at the time of submission of the motion together with an affidavit of service upon all parties who are entitled to notice. In future applications, the following language (if not already included by counsel for plaintiff) will be appended by this court to judgments appointing the referee to sell:
“For any scheduled sale canceled on less than 48 hours notice to the referee, the referee shall be entitled to an additional $250.00 for each said scheduled sale, subject to the approval of the court at the time of the confirmation of the sale pursuant to CPLR 8003 (b). In the event the referee attends a sale which is canceled without prior notice to the referee, the referee shall be entitled to an additional $500 for attending a re-scheduled sale, subject to the approval of the court at the time of the confirmation of the sale pursuant to CPLR 8003 (b). For a third party closing, the referee shall be entitled to an additional fee of $500, subject to the approval of the court at the time of the confirmation of the sale pursuant to CPLR 8003 (b). All parties may address the court as to the reasonableness of such fees, including the adequacy or inadequacy thereof, on the motion to confirm the report of sale or by separate motion.”

. In U.S. Mtge. v Almeida (supra), the court noted the prevalent practice in many counties for referees to seek and obtain additional compensation of $500 per scheduled sale, and for plaintiff mortgagees to voluntarily pay such compensation, without court approval.

. The condominium development states that it is the only claimant to the surplus funds.

. In Almeida (8 Misc 3d at 697), this court stated “It is settled that the plaintiff may agree to pay additional compensation to a referee in a foreclosure action. (National Bank of N. Am. v New Paltz Growers, 89 AD2d 647 [3d Dept 1982].)” That statement was based on the language in National Bank of N. Am. v New Paltz Growers (supra) dealing with compensation for a referee to compute. That Court held, “[i]f a referee is dissatisfied with and unwilling to accept the statutory fees, and the parties, of their own volition, have failed to agree and stipulate to an acceptable fee, his course of action is to seek relief from the court and not from the parties.” (at 648 [emphasis added].) This Court only meant to state that the plaintiff and the other parties may agree to enhanced compensation. It was not meant to indicate that a referee might unilaterally demand additional or excessive fees or that an attorney for a plaintiff might unilaterally agree to pay the referee any amount of compensation without court approval (recognizing that a plaintiff might well agree to pay such a fee rather than incur additional delay by making a motion). Clearly the amount of compensation to the referee will ultimately be reflected in the amount of the deficiency judgment or the surplus, and thus the rights of all parties must be protected from unilateral arrangements.

. This court noted that as to whether the sale price exceeded $50,000, some experts, based on ancient cases (see 2 Bergman, New York Mortgage Foreclosures § 27.03 [2] [“Referee’s Fee to Sell”]), had stated that the purchase price is the amount bid. The court stated, “This court is not prepared to follow such a rule, which seems manifestly unjust, and is prepared to receive argument on the subject in an appropriate case.” (U.S. Mtge. v Almeida, 8 Misc 3d at 698 n 1.)